IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| M. Kathleen McKinney, Regional Director of Region 15 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, <br><br>Petitioner, <br><br>v. <br><br>OZBURN-HESSEY LOGISTICS, LLC, <br><br>Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br>No. 2:14-CV-02445 <br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR INDICATIVE RULING REGARDING MODIFICATION OF 10(J) INJUNCTION**

## I. INTRODUCTION

This Court has issued extraordinary injunctive relief requiring the reinstatement of eight former OHL employees whose unfair labor practice charges have now been dismissed. Therefore, based on the findings of the Administrative Law Judge who listened to the testimony in this case for two weeks and issued a 167-page decision, respondent Ozburn-Hessey Logistics, LLC ("OHL"), pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, submits this Memorandum of Law in Support of its Motion for Indicative Ruling. As grounds for this Motion, OHL asserts that, in light of the April 28, 2015 Decision of the Administrative Law Judge dismissing of many of the 8(a)(1), 8(a)(3), and 8(a)(4) charges that are the subject of the 10(j) injunction, there is no longer reasonable cause to believe that many of the alleged unfair labor practices have occurred and that a 10(j) injunction is just and proper. Because the District Court "should . . . defer to the determination which emerges in the administrative process following the first careful, deliberate, painstaking inquiry into the facts," the Court should issue a

ruling indicating that it would modify the injunction based on the findings of the Administrative Law Judge if this case were remanded to this Court by the Sixth Circuit Court of Appeals. *Szabo v. Kantor Pepsi-Cola Bottling, Co.*, 1979 WL 2012 at *1 (W.D. Wis. Nov. 30, 1979).

## II. BACKGROUND

This case arises out of various unfair labor practice charges filed by the Union, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("the Union") against OHL between July 2013 and February 2014. The charges were consolidated for trial before the Honorable Keltner Locke, an Administrative Law Judge ("ALJ") of the NLRB, on June 2-6, 2014 and July 21-25, 2014.

The NLRB filed a Petition for Temporary Injunction under Section 10(j) of the NLRA on June 13, 2014 before this Court. This Court granted the NLRB's Petition in its entirety on January 29, 2015. ECF No. 30. This Court ordered OHL

> 1. . . . to cease and desist from the following acts and conduct, pending the final disposition of the matters involved herein by the Board:
>
>> (a) Engaging in surveillance of employees engaged in union activity;
>> (b) Unlawfully giving employees the impression that their union activities are under surveillance;
>> (c) Confiscating and removing pro-union literature or materials from employee break rooms during the work day;
>> (d) Ordering employees engaged in lawful solicitation and distribution activities to leave OHL's premises;
>> (e) Threatening employees with reprisals because they engaged in union activity;
>> (f) Telling employees that they should quit their jobs with OHL and find different jobs if they have complaints or otherwise engage in union activities;
>> (g) Assigning more onerous and rigorous job duties to employees because of their activities;

> (h) Performing drug or alcohol testing on employees because of their union activities;
> (i) Disciplining, suspending, discharging or otherwise discriminating against employees because of their union activities;
> (j) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them in Section 7 of the Act.

ECF No. 30 at 23-24. The Court ordered OHL to offer reinstatement to, among others, the following OHL employees: Renal Dotson; Jerry Smith, Jr.; Shawn Wade; Reginald Ishmon; Deangelo Walker; Nannette French; Jerry Smith, Sr.; and Nathaniel Jones. *Id.* at 24. The Court ordered OHL to expunge the disciplines related to the terminations from those employees' records. *Id.* The Court additionally ordered OHL to reassign OHL employee Jennifer Smith to the position of auditor and to expunge certain disciplines from her record. *Id.* OHL complied with the Court's Order. (Decl. of Lisa Johnson, ECF No. 33).

On February 27, 2015, OHL timely appealed the Order granting the 10(j) injunction to the 6th Circuit Court of Appeals. That appeal is still pending.

On April 28, 2015, ALJ Locke issued a trial decision. In that trial decision, ALJ Locke dismissed almost all of the Petitioner's 8(a)(1), 8(a)(3), and 8(a)(4) charges. *See generally Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 38 (April 28, 2015 Decision of Administrative Law Judge).

### III. LEGAL STANDARD

"To obtain modification or dissolution of an injunction, a movant must demonstrate significant 'changes in fact, law, or circumstance since the previous ruling.'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (quoting *Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 873 F.2d 647, 648-49 (2d Cir. 1989)).

OHL is aware that "an interlocutory appeal of a preliminary injunction divests a trial court of jurisdiction only as to those questions raised and decided in that order." *In re Ernst & Young, Inc.*, 129 B.R. 147, 151 (S.D. Ohio 1991). *Cf. Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) ("an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue deciding *other issues in the case*") (emphasis added). OHL therefore does not ask the Court to modify the 10(j) injunction at this time, as OHL's appeal of the 10(j) injunction to the Court of Appeals divested this Court of jurisdiction to modify the injunction.

This Court does, however, have jurisdiction to issue an indicative ruling pursuant to Rule 62.1 of the Federal Rules of Civil Procedure. Rule 62.1 provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a)(3).

## IV. ARGUMENT

This Court found sufficient evidence to support the Petitioner's allegations that OHL violated Section 8(a)(1), 8(a)(2), 8(a)(3), and 8(a)(4). The Petitioner based these allegations in part on the following incidents: (1) the discharge of Renal Dotson; (2) the final warning issued to Jerry Smith, Sr.; (3) the discharge of Jerry Smith, Sr.; (4) the discharge of Jerry Smith, Jr.; (5) the discharge of Shawn Wade; (6) the discharge of Reginald Ishmon; (7) the discharge of Deangelo Walker; (8) the discharge of Nannette French; (9) an alleged adverse employment action regarding Jennifer Smith; (10) the final warning issued to Jennifer Smith; (11) alleged

surveillance and drug testing of Glenora Whitley; (12) the discharge of Nathaniel Jones; and (13) various alleged acts of surveillance.

On a proceeding for a 10(j) injunction, the court does not adjudicate the merits of the charges, resolve conflicting evidence, or weigh credibility. *Muffley ex rel. N.L.R.B. v. Voith Indus. Servs., Inc.*, 551 F. App'x 825, 828, 830 (6th Cir. 2014). The ALJ does, however, consider the merits of the charges, resolve conflicting evidence, and weigh credibility. ALJ Locke dismissed of almost all of the allegations of violations of Section 8(a)(1), 8(a)(3), and 8(a)(4).

Courts give great weight to an ALJ's credibility determinations. The Sixth Circuit has stated that "[t]he significance, on review, of an administrative law judge's decision largely depends on the importance of witness credibility in the particular case and we will not normally disturb the credibility assessments of the Board or an administrative law judge, 'who has observed the demeanor of the witnesses.'" *D.J. Elec. Contracting, Inc. v. N.L.R.B.*, 983 F.2d 1066 (6th Cir. 1993) (quoting *Litton Microwave Cooking Prods. v. N.L.R.B,* 868 F.2d 854, 857 (6th Cir. 1989)). Additionally, it is well-settled that the Board will not overrule an administrative judge's credibility determinations unless "the clear preponderance of *all* the relevant evidence convinces [the Board] that the [administrative law judge]'s resolution was incorrect." *Standard Dry Wall Prods.*, 91 NLRB 544 (1950), *enforced* 188 F.2d 362 (3d Cir. 1951) (emphasis in original).

The District Court "should . . . defer to the determination which emerges in the administrative process following the first careful, deliberate, painstaking inquiry into the facts," ALJ Locke's Decision constitutes "changed circumstances" such that the 10(j) injunction should be modified to comport with the ALJ's findings. *Szabo v. Kantor Pepsi-Cola Bottling, Co.*, 1979

WL 2012 at *1 (W.D. Wis. Nov. 30, 1979). *See also Dunbar v. Landis Plastics, Inc.*, 152 F.3d 917 (2d Cir. 1998) ("it is appropriate to remand the matter to the district court for further consideration of the appropriateness of the imposition and the terms of injunctive relief *in light of the ALJ's decision*") (emphasis added); *Paulsen ex rel. N.L.R.B. v. Remington Lodging & Hospitality, LLC*, 2013 WL 4119006, at *8 (E.D.N.Y. Aug. 14, 2013) *aff'd in part, rev'd in part on other grounds, and remanded sub nom. Paulsen v. Remington Lodging & Hospitality, LLC*, 773 F.3d 462 (2d Cir. 2014) ("when an ALJ has made factual findings and issued a decision, the Court must also give appropriate deference to the ALJ's decision"); *NLRB v. Irving Ready-Mix, Inc.*, 780 F. Supp. 2d 747, 766-67 (N.D. Ind. 2011) ("A district court . . . is advised to give deference to the opinions rendered by the ALJ . . . . having presided over the merits hearing, the ALJ's factual and legal determinations supply a useful benchmark against which the Director's prospects of success may be weighed.").

### a. Renal Dotson Discharge

The Petitioner alleged that OHL suspended and then discharged Renal Dotson ("Dotson") based on his Union involvement. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 38 (April 28, 2015 Decision of Administrative Law Judge). OHL asserted, however, that it lawfully terminated Dotson for insubordination and refusal to submit to a drug test after a forklift accident. Order Granting Pet. for Temporary Inj. 16, January 29, 2015, ECF No. 30. Pursuant to OHL's accident policy, OHL ordered Dotson to go to Concentra, a drug testing facility, and take a drug test after the forklift accident. OHL first attempted to administer a saliva-based test, but the results of that test were voided because Dotson chewed gum prior to its administration. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192, at 46. This Court noted that "Dotson *reportedly* dropped his cup and wasted part of the sample while at Concentra." Order at 16 (emphasis

added).  This Court also found that Dotson wanted to be sent to a facility other than Concentra for drug testing; that Dotson had voluntarily taken a drug test at a non-Concentra facility after the forklift accident; and that there were "other reputable agencies used by OHL where Dotson could have been sent for testing." *Id.* at 17.  This Court therefore "found that Petitioner offered "sufficient evidence in support of its legal theories that Section 8(a)(3) and (4) violations occurred" and ordered OHL to offer Renal Dotson full reinstatement to his former job and to expunge the discipline issued by OHL. *Id.* at 17, 24.

ALJ Locke did not credit Dotson's testimony, finding that that "portions of the testimony are inherently implausible."  *Ozburn-Hessey Logistics, LLC*, 26-CA-092192, at 38.  ALJ Locke commented that Dotson's testimony was "cryptic," "opaque," and included "serial, material misstatements of fact . . . which utterly destroy his credibility as a witness." *Id.* at 44, 45, 53. ALJ Locke credited the testimony of the Concentra representative, Jacquelyn Porter ("Porter"), who testified that urine sample provided by Dotson was "discolored, did not have a temperature . . . [and] had a lot of debris at the bottom." *Id.* at 47-48.  ALJ Locke did not credit Dotson's testimony that he dropped the cup containing his urine specimen, or his testimony that Porter indicated there was no problem after he allegedly dropped the cup. *Id.* at 48-49.  ALJ Locke also did not credit Dotson's testimony that he asked to go to another testing facility other than Concentra and that OHL Human Resources Manager Lisa Johnson ("Johnson") thought "that was a good idea." *Id.* at 49.  ALJ Locke also found that although Dotson went to another drug testing facility and obtained a certificate showing negative results, the "certificate . . . does not persuade me." *Id.* at 49.  ALJ Locke additionally found that "there is controvertible evidence that Dotson's testimony [that he did not refuse to return to Concentra after returning to work from suspension] does not reflect what happened . . . video . . . documents that Dotson repeatedly

7

said that he did not want to return to Concentra and that he refused to do so. The video also establishes that [Operations Director Phil] Smith warned Dotson that if he did not go to Concentra right then, it would be considered refusal to take a drug test." *Id.* at 51.

Additionally, ALJ Locke found no merit in the argument that OHL could have sent Dotson to another laboratory in the Memphis area because "the record does not establish that [OHL] deviated from its established practice by using Concentra," and because OHL "took Dotson's [complaints] about Concentra seriously. One of [OHL]'s managers went to Concentra and interviewed Porter . . . [b]efore telling Dotson he had to go back to Concentra, the Respondent satisfied itself that Dotson's complaints about Concentra lacked merit." *Id.* at 53-54. Based on these credibility determinations, ALJ Locke dismissed the charges as they related to Dotson.

### b. Jerry Smith Final Warning and Discharge

The Petitioner alleged that OHL unlawfully issued a final warning to OHL employee Jerry Smith after he placed Union materials on break room tables during non-work time. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192, at 100, 109. OHL asserted, however, that it lawfully issued a final warning to Jerry Smith for: (1) distributing Union literature on break room tables during work time in violation of company policy; and (2) continuing to distribute Union literature in violation of OHL policy after being told to stop by OHL Director of Operations Phil Smith. *Id.* at 101; Order at 17-18. The Petitioner also alleged that OHL unlawfully terminated Jerry Smith because of his Union involvement. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 109. OHL asserts it terminated Jerry Smith for falsifying answers on a company questionnaire about leaving the warehouse during work time without permission. Order at 17. This Court found that "[u]pon review of the conflicting evidence regarding [Jerry Smith's] termination[], . . .

8

Petitioner has offered sufficient facts in support of its legal theories that Section 8(a)(1), (3), and (4) violations were committed against . . . Jerry Smith." *Id.* at 18. This Court ordered OHL to offer reinstatement to Jerry Smith and to expunge the discipline issued by OHL. *Id.* at 24.

ALJ Locke credited Phil Smith's testimony over Jerry Smith's testimony, and found that that Phil Smith told Jerry Smith that OHL prohibited employees from distributing union literature during work time. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 101-03.

Additionally, ALJ Locke found that Mr. Smith gave false answers on a questionnaire about leaving the warehouse during work hours. *Id.* at 114. ALJ Locke did not credit Jerry Smith's explanation that he did not understand the answers on the questionnaire or that he OHL gave him permission to leave the building on the day that was the subject of the questionnaire. *Id.* at 111-12. Based on these credibility determinations, ALJ Locke dismissed the allegations related to Jerry Smith. *Id.* at 106, 117-18.

### c. Jerry Smith, Jr. Discharge

The Petitioner alleged that OHL unlawfully discharged employee Jerry Smith, Jr. ("Smith Jr.") because he advocated for the Union when talking to other employees and wore Union shirts. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 55. OHL asserted, however, that it lawfully fired Smith Jr. for operating his forklift without first fastening his seatbelt after OHL previously issued him a warning for a similar infraction. *Id.* at 55-56. The Petitioner countered that OHL disciplined Smith Jr. more harshly than others who committed similar infractions. Order at 18. This Court found that "upon review of the conflicting evidence regarding [Smith Jr.]'s termination[], . . . Petitioner has offered sufficient facts in support of its legal theories that Section 8(a)(1), (3), and (4) violations were committed against . . . Jerry Smith, Jr." *Id.* at 18.

This Court ordered OHL to offer reinstatement to Jerry Smith and to expunge the discipline issued by OHL related to the seatbelt infraction. *Id.* at 24.

ALJ Locke did not credit Smith Jr.'s testimony. The parties presented conflicting testimony as to whether the forklift was moving when Smith Jr. was not wearing a seatbelt. Operations Manager Jim Windisch ("Windisch") testified that he saw Smith Jr. operating his forklift without fastening his seatbelt. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 55. Smith Jr. testified that he was not moving his forklift when he was unbuckled. *Id.* ALJ Locke credited Windisch's testimony instead of Smith Jr.'s, because "Smith Jr. admitted that he had stated in his pretrial affidavit that the forklift was rolling forward when Windisch approached." *Id.* Based on this credibility determination, ALJ Locke dismissed the allegations related to Smith, Jr.

### d. Shawn Wade Discharge

The Petitioner alleged that OHL unlawfully discharged employee Shawn Wade ("Wade") after OHL's Senior Vice President, Randall Coleman ("Coleman"), observed him receiving and signing a union card. Wade testified that as he signed his union card in the OHL parking lot, Coleman drove by and the two made eye contact in Coleman's rearview mirror. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 57. OHL, on the other hand, asserted that it lawfully fired Wade for leaving the warehouse without clocking out and without asking a supervisor's permission to move his parked car, in violation of a well-known and enforced rule prohibiting employees from leaving the building without authorization. *Id.* at 58. This Court found that the record "offers differing accounts of enforcement of [OHL's] [policy prohibiting employees from leaving the building without authorization]. However, Petitioner has offered sufficient evidence to support its theory that OHL violated Sections 8(a)(1) and (3) in order to discourage union

10

membership." Order at 12. This Court ordered OHL to offer reinstatement to Wade and to expunge the discipline related to Wade leaving the warehouse. Order at 24.

ALJ Locke did not credit Wade's testimony about making eye contact with Coleman in Coleman's rearview mirror, because of "the distances involved" and because "Coleman's car was moving," making it "unlikely that Wade would have had opportunity to see into Coleman's car sufficiently to discern the driver's eyes in the rear view mirror." *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 58. ALJ Locke credited Coleman's testimony that he "did not look directly at [Wade] while Wade was filling out the union card." *Id.* at 59. Additionally, ALJ Locke found that the record did not establish that Coleman knew Wade, or knew that the paper Wade signed was a Union card. *Id.* at 58. Based on these credibility determinations, ALJ Locke dismissed the unfair labor practice allegations concerning Wade's termination. *Id.* at 61. This Court never even determined whether OHL had knowledge of Wade's union activity, even though OHL's knowledge of his union support is an essential element of his claim.

### e. Reginald Ishmon Discharge

The Petitioner alleged that OHL unlawfully terminated employee Reginald Ishmon ("Ishmon") after Operations Supervisor Antonio Goodloe ("Goodloe") witnessed Ishmon accepting a Union card. OHL asserted, however, that it lawfully terminated Ishmon for failing to report an accident that resulted in approximately $7,000.00 in damages. Order at 12. This Court observed that "[o]ther OHL employees had reportedly been involved in accidents or damaged goods but continued working for OHL," and that the Board "offered sufficient evidence support its theory that employees were wrongfully disciplined and threated in violation of Section 8(a)(3)." *Id.* at 13. This Court ordered OHL to offer reinstatement to Ishmon and to expunge the discipline. *Id.* at 24.

11

ALJ Locke expressed doubt about the veracity of Ishmon's testimony, but accepted it as true because it was not contradicted. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 63-67. The ALJ found, however, that OHL "carried its burden of showing that it would have discharged Ishmon even if he had not engaged in protected activity" and dismissed the charges related to Ishmon.

**f. Deangelo Walker Discharge**

The Petitioner alleged that OHL unlawfully discharged probationary employee Deangelo Walker ("Walker"): (1) after he complained to Operations Manager Margaret Bonner ("Bonner") that a "union was needed because newly-hired workers were paid more than senior employees;" and (2) one week after Bonner observed Walker signing a Union authorization card. Order at 13. OHL asserted, however, that it lawfully terminated Walker after Bonner observed him talking on his cell phone on the warehouse floor, in violation of OHL policy. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 73. This Court observed that "[t]here is proof that several other employees had been issued warnings for having their cell phones on the floor but never had an employee been terminated," and that "based on the proximity to Walker's pro-union activity and the various disciplinary measures taken by OHL for cell phone usage, Petitioner has provided sufficient evidence to support its theory of Sections 8(a)(1) and (3) violations." Order at 13-14. This Court ordered OHL to offer reinstatement to Ishmon and to expunge the discipline related to his cell phone use. *Id.* at 24.

ALJ Locke did not credit Walker's testimony. ALJ Locke credited Bonner's testimony over Walker's, and found that Walker used his cellphone to make a phone call on the warehouse floor. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 75. ALJ Locke also found that "the credited evidence does not support a finding of disparate application of the cellphone policy."

12

*Id.* at 79. Additionally, ALJ Locke credited Bonner's testimony that she did not observe Walker signing a union card. *Id.* at 71, 73. ALJ Locke also credited Bonner's testimony that Walker did not tell her that OHL needed the Union because new hires earned more money than senior employees. *Id.* at 72-73. Based on these credibility determinations, ALJ Locke dismissed the allegations relating to Walker. *Id.* at 79.

### g. Nannette French Discharge

The Petitioner alleged that OHL unlawfully terminated probationary employee Nannette French ("French") nine days after OHL Operations Supervisor Antonio Goodloe ("Goodloe") and Bonner observed her "signing and distributing union cards." Order at 14. OHL asserts, however, that it lawfully terminated French after she accumulated the maximum number of attendance points provided for by OHL's attendance policy. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 80. This Court found that the Board "offered sufficient evidence to support its legal theory that OHL committed Section 8(a)(1) and (3) violations against French." Order at 14. This Court ordered OHL to offer reinstatement to French and to expunge the discipline related to her attendance. *Id.* at 24.

ALJ Locke credited Bonner's testimony over French's testimony. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 79. ALJ Locke denied seeing French distributing Union cards. *Id.* at 79. There were other testimonial conflicts between Bonner's testimony and French's testimony, and ALJ Locke credited Bonner's testimony over French's. *Id.* at 80-81. ALJ Locke also found that the "credible evidence did not establish that Goodloe saw French when she was passing out union cards." *Id.* at 79. Based on these credibility determinations, ALJ Locke dismissed the allegations relating to French. *Id.* at 81. The Court never even determined

whether OHL had knowledge of French's union support, even though OHL's knowledge of her union support is an essential element of her claim.

### h. Jennifer Smith Adverse Employment Action and Final Warning

The Petitioner alleged that OHL unlawfully subjected employee Jennifer Smith ("Ms. Smith") to an adverse employment action – specifically, reassignment to the more physically strenuous position of "picker" rather than "auditor" – for assisting the Union and engaging in concerted activities. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 96-97. The Petitioner also alleged that OHL unlawfully issued Ms. Smith a final warning because she assisted the union and engaged in concerted activities. *Id.* at 106. OHL asserts, however, that a picker position is not more strenuous than an auditor position and that it lawfully issued Ms. Smith a written warning for inappropriately touching a co-worker, Luz Balderrama ("Balderrama"). Order at 15. This Court found that the Board offered "sufficient evidence support Petitioner's theory Section 8(a)(1), (3), and (4) violations occurred." *Id.* at 15. This Court ordered OHL to reassign Ms. Smith to auditing duties and to expunge her discipline related to the Balderrama incident. *Id.* at 24.

ALJ Locke credited the testimony of OHL Operations Manager David Maxey ("Maxey") over Ms. Smith's testimony. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 98. Maxey testified that he "actually assigned Smith to less strenuous work," because he observed her asking pickers to help her stack her pallets because they were too heavy, which is part of an auditor's job. *Id.* at 97. ALJ Locke therefore found that the change in Ms. Smith's duties was not an adverse employment action. ALJ Locke also found that Ms. Smith's duties as a picker are not "appreciably more arduous than that of auditor." *Id.* at 99. Additionally, the ALJ credited Balderrama's testimony, rather than Ms. Smith's, and found that Ms. Smith pushed Balderrama

14

in the restroom after Balderrama refused to sign a union card. *Id.* at 107-08. Based on these credibility determinations, ALJ Locke dismissed the allegations relating to Ms. Smith.

### i. Glenora Whitley Drug Testing

The Petitioner alleged that OHL required employee Glenora Whitley ("Whitley"), a Union supporter, to submit to random drug and alcohol testing. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 96-97. OHL denies that it submitted Whitley to random drug and alcohol testing. This Court found that the Board offered "sufficient evidence that Respondent interfered with employees' ability to engage in union solicitation, and prevented offsite employees from distributing union literature or visiting the location in order to acquire union support, in violation of Sections 8(a)(1) and (3)." Order at 10.

ALJ Locke did not credit Whitley's testimony, but instead credited the testimony of OHL Operations Manager Quinn Farmer, who testified that he never sent Whitley for a drug test. *Id.* at 100. ALJ Locke stated that "[b]ecause I do not credit her testimony, I do not find that she was ever sent for a drug test." *Id.* Based on this credibility determination, ALJ Locke dismissed the unfair labor practices relating to Whitley.

### j. Nathaniel Jones Discharge

The Petitioner alleged that OHL unlawfully terminated employee Nathaniel Jones ("Jones") after he discussed the Union with other OHL employees and asked OHL Director of Operations Phil Smith a question about the Union. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 118. OHL asserts, however, that it lawfully terminated Jones after leaving his running forklift unattended. *Id.* at 118-19. Jones did not dispute that he left his forklift unattended while it was running. *Id.* at 119. This Court did not make any specific findings as to whether OHL

violated the Act relating to Jones, but ordered that OHL offer to reinstate Jones and expunge his discipline related to the forklift incident. Order at 24.

ALJ Locke credited the testimony of OHL Senior Employee Relations Manager Shannon Miles ("Miles") who testified she was unaware that Jones engaged in any protected activity. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 119.  Miles made the decision to discharge Jones.  *Id.* at 120.  Because Miles was unaware of Jones's protected activity, the ALJ found that Jones's protected activity was not a substantial or motivating factor in Miles's decision to terminate him.  *Id.* at 121.  Based on this credibility determination, ALJ Locke dismissed the allegations relating to Jones.  *Id.* at 126.

### k. May 15, 2013 Surveillance

The Petitioner alleged that on May 15, 2013, OHL Operations Supervisor Kyle Perkins ("Perkins") "observed and took pictures on his cellular telephone of employees signing union cards." Order at 11.  OHL denied that Perkins took such photographs.  *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 23.  Related to that allegation, this Court found that the Petitioner offered "sufficient evidence to support its theory that OHL Sections 8(a)(1) and (3)."  Order at 12.

ALJ Locke credited Perkins' testimony.  Perkins was in the OHL parking lot while OHL employee Dwayne Nelson solicited other employees to sign union cards; however, the parties presented conflicting testimony "concerning whether Perkins held his cellphone out as a person would do to take a photograph."  *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 24-25.  ALJ Locke "resolve[d] conflicts in the testimony by crediting Perkins," and found "that Perkins did not take a photograph or video."  *Id.* at 25.  Furthermore, ALJ Locke found that "the credited evidence establishes only that Perkins was talking on his cell phone and smoking a cigarette, actions which were ordinary, not out of the ordinary . . . neither smoking a cigarette nor talking

on a cellphone reasonably would be interpreted as surveillance of union activity." *Id*. at 27. Based on these credibility determinations, ALJ Locke dismissed the allegations relating to Perkins. *Id.* at 27.

### *l*. May 17, 2013 Threats

The Petitioner alleged that on May 17, 2013, OHL Operations Manager Margaret Bonner ("Bonner") told OHL employees during a meeting that they were not members of a union. Order at 13.

The parties presented conflicting testimony regarding this incident, and ALJ Locke credited the testimony of Bonner over the testimony of OHL employee Nannette French. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 29-30. Based on this credibility determination, ALJ Locke dismissed the allegations relating to Bonner telling employees they were not members of a union. *Id.* at 30.

### m. May 14, 2013 Goodloe Surveillance

Petitioner alleges that on May 14, 2013, OHL Operations Supervisor Antonio Goodloe ("Goodloe") surveilled OHL employees engaged in Union activity. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 5. The Court found that "[d]espite the contradicted testimony, [there is] sufficient evidence that Respondent interfered with employees' ability to engage in union solicitation, and prevented offsite employees from distributing union literature or visiting the location in order to acquire union support, in violation of Sections 8(a)(1) and (3)." Order at 10.

ALJ Locke found that Whitley's testimony about Goodloe's surveillance was not credible because it was inconsistent. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 8. ALJ Locke also did not credit French and Smith's testimony regarding Goodloe's alleged surveillance. *Id.* at 10. ALJ Locke further found that the "credible evidence does not establish that the man [who

allegedly surveilled OHL employees] was [Goodloe]." *Id.* at 10. Based on these credibility determinations, ALJ Locke dismissed the allegation that Goodloe surveilled OHL employees engaged in Union activity. *Id.* at 10.

### m. May 14, 2013 Bonner Surveillance

Petitioner alleged that on May 14, 2013, Bonner engaged in surveillance of OHL employees engaged in Union activity by watching Whitley and Jerry Smith engage in Union activities until they left the parking lot, and by standing in the conference room and watching French through the window. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 14. This Court did not address these specific allegations, but found that "[d]espite the contradicted testimony, [there is] sufficient evidence that Respondent interfered with employees' ability to engage in union solicitation, and prevented offsite employees from distributing union literature or visiting the location in order to acquire union support, in violation of Sections 8(a)(1) and (3)." Order at 10.

ALJ Locke credited Bonner's testimony and found that Bonner did not watch Whitley and Jerry Smith until they left the parking lot, and found that Bonner did not watch French through the conference room window. *Ozburn-Hessey Logistics, LLC*, 26-CA-092192 at 14-15. Based on these credibility determinations, ALJ Locke dismissed the allegations relating to Bonner's surveillance of Whitley, Smith, and French.

## V. CONCLUSION

For the reasons set forth above, OHL asserts that, in light of the April 28, 2015 Decision of the Administrative Law Judge recommending dismissal of many of the 8(a)(1), 8(a)(3), and 8(a)(4) charges that are the subject of the 10(j) injunction, there is no reasonable cause to believe that many of the alleged unfair labor practices have occurred and the 10(j) injunction is no longer

just and proper. Because the District Court "should . . . defer to the determination which emerges in the administrative process following the first careful, deliberate, painstaking inquiry into the facts," OHL respectfully requests the Court issue a ruling indicating it would modify the injunction to comport with the findings of the ALJ pursuant to Rule 62.1 of the Federal Rules of Civil Procedure if the injunction were remanded back to this Court by the 6th Circuit Court of Appeals. *Szabo v. Kantor Pepsi-Cola Bottling, Co.*, 1979 WL 2012 at *1 (W.D. Wis. Nov. 30, 1979).

        Respectfully submitted,

        BAKER, DONELSON, BEARMAN,
        CALDWELL & BERKOWITZ, P.C.

        *s/Ben Bodzy*
        Ben Bodzy (Tenn. Bar No. 023517)
        Baker Donelson Center
        Suite 800
        211 Commerce Street
        Nashville, TN 37201
        Telephone:    (615) 726-5640
        Fax:    (615) 744-5640
        bbodzy@bakerdonelson.com

        And

        Stephen D. Goodwin (Tenn. Bar No. 6294)
        First Tennessee Bank Building
        165 Madison Avenue, Suite 2000
        Memphis, TN 38103
        Telephone:    (901) 577-2141
        Fax:    (901) 577-0734
        sgoodwin@bakerdonelson.com

        *Attorneys for Respondent*
        *Ozburn-Hessey Logistics, LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 13th day of May, 2015, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system:

| | |
|---|---|
| William T. Hearne<br>NLRB<br>80 Monroe Avenue, Suite 350<br>Memphis, Tennessee 38103 | Christopher J. Roy<br>NLRB<br>80 Monroe Avenue, Suite 350<br>Memphis, TN  38103 |
| Attorney for Petitioner | Attorney for Petitioner |

                                          s/Ben Bodzy
                                          Ben Bodzy